MODEL INDUSTRIES, INC., Plaintiff-Appellant and Cross-Appellee, *v.* WALSH PRESS & DIE COMPANY, Defendant-Appellee and Cross-Appellant.

First District (5th Division)   No. 81—1721

Opinion filed December 23, 1982.

Thomas J. Keevers, of Chicago (Thomas J. Keevers and Patricia M. Sack, of counsel), for appellant.

James T. Keating, of Chicago (James T. J. Keating and Elizabeth S. Davis, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

Prior to trial, Model Industries, Inc. (hereinafter Model), gave notice to Walsh Press & Die Company (hereinafter Walsh) and sought a voluntary dismissal of its suit pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1009) formerly section 52 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 52) (hereinafter section 2—1009). Subsequently, Walsh filed a motion for costs and attorney fees pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611) formerly section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41) (hereinafter section 2—611) in the amount of $6,128.64, later amended to $6,248.64. After hearings were held on the motions, the trial court awarded to Walsh costs pursuant to section 2—1009 in the amount of $766.15 and also attorney fees pursuant to section 2—611 in the amount of $4,575.15. Model's sole issue on appeal is whether the trial court erred in awarding attorney fees to Walsh. In addition, Walsh cross-appeals for an increase in its attorney fees award. For the reasons that follow we reverse the trial court.

On April 10, 1978, Model filed a products liability suit against Walsh and Allen-Bradley Company to recover costs in the amount of $11,896, paid by Model pursuant to a successful worker's compensation claim filed by one of its employees for injuries sustained while working on a punch press, designed, manufactured and sold by Walsh and equipped with a foot pedal, designed, manufactured and sold by Allen-Bradley Company. After extensive pretrial discovery, Model filed an amended complaint which itemized several additional conditions of the press which rendered it not reasonably safe. Thereafter, Walsh filed affirmative defenses.

On February 27, 1980, Allen-Bradley Company filed a motion for summary judgment, stating that prior to the accident in question, the foot pedal on the punch press had been altered by Model, thus changing the condition of the pedal from that which it was in when it left Allen-Bradley's control. Several months later, Walsh filed a motion to join Allen-Bradley's summary judgment motion. The trial court granted the motion as per Allen-Bradley Company, but denied it as per Walsh.

On June 2, 1980, one day before trial, Model served notice on

Walsh that the next day it would present a motion for voluntary dismissal pursuant to section 2—1009 "on the grounds that plaintiff's counsel has after great diligence been unsuccessful in locating witnesses for presentation of plaintiff's case." Subsequently, Walsh filed a motion for costs and attorney fees pursuant to section 2—611 alleging, in pertinent part, that (1) the claim against Walsh was not brought in good faith; (2) the claim was made without reasonable cause; (3) the suit was frivolous and vexatious; (4) the suit put an undue burden upon defendant to expend money upon attorney fees which the court should restore; and (5) "expenses and attornye's [*sic*] fees should be awarded when pleader's allegations are found to be untrue and made in bad faith without reasonable cause."

Thereafter, on December 22, 1980, a hearing was held on the motions for voluntary dismissal and for costs and attorney fees, after which the trial court entered an order allowing Model additional time to file proofs supporting its objection to Walsh's allegations. At that time, the court indicated that it was "gravitating to the position that [the suit] was unreasonable based on what [it had] heard so far."

At the second hearing, the court granted Model's motion for voluntary dismissal subject to payment of costs incurred by Walsh in the amount of $766.15. The next area of discussion was the award of attorney fees. At the outset, the record reveals that there was some confusion as to whether Walsh was proceeding under section 2—1009 or section 2—611.

"MR. KEEVERS: *** I do have an objection to the interchangeable use of the word of 'costs' and 'attorney's fees'. These are two separate things recognized in the law. Section [2—1009] allows the costs. It does not allow for attorney's fees. Attorney's fees are conspicuous by their absence from Section [2—1009].

* * *

THE COURT: *** which brings me back to a question, again, if Mr. Keevers' point is correct, and you say you are still proceeding under [2—1009]—

* * *

THE COURT: You may do so, but then, that's in derogation of his view of the law. He thinks you should be under [2—611].

MR. KEATING: Well, my understanding is what you were doing, your Honor, is that you had read Section [2—1009] and that at the end of Section [2—1009], it says, dismissal, voluntary dismissal will be upon any other order of the court. I myself have never pursued the attorney's fees under Section [2—

1009]. I thought that you were indicating to me that you believe that the attorney's fees might be pursued under [2—1009] under—as other costs as the Court might deem reasonable.

THE COURT: Let me state for the record that I am aware of no case that permits me to allow attorney's fees under [2—1009].

MR. KEATING: I'm not either, your Honor.

THE COURT: I'm sorry if I—

MR. KEATING: I wasn't going to close the gate and then come back later.

THE COURT: We are on [2—611]."

At the conclusion of the hearing, the court took the matter under advisement. On June 12, 1981, the court granted Walsh's motion for section 2—611 attorney fees in the amount of $4,575.15, covering the period from June 16, 1978, through June 3, 1980. Thereafter, pursuant to Illinois Supreme Court Rule 305 (73 Ill. 2d R. 305), Model moved to stay enforcement of the order pending appeal. The motion was granted. Subsequently, Walsh filed a notice of cross-appeal, requesting this court to amend the trial court's award to $7,531.30, the amount originally requested by Walsh for attorney fees.

OPINION

Model contends that the trial court erred in awarding attorney fees pursuant to section 2—611 on the grounds that the allegations in Model's amended complaint were true, and, in fact, were admitted to be true by defense counsel in the course of the trial court proceedings.

Section 2—611 of the Code of Civil Procedure provides in part:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee ***."

It is well established in Illinois that absent a statute or contractual agreement, attorney fees and ordinary expenses and burdens of litigation are not allowable to the successful party. An established corollary to this rule is that any statute providing for the recovery of such costs must be strictly construed. (*Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 417 N.E.2d 167.) Because section 2—611 is penal in nature, Illinois courts have steadfastly adhered to this principle of strict construction and have invoked section 2—611 sanctions only in cases falling strictly within its

terms and each of its requirements; specifically, "allegations and denials, made without reasonable cause and found to be untrue" must be proved by the party seeking relief.[1] (*Himco Systems, Inc. v. Marquette Electronics, Inc.* (1980), 86 Ill. App. 3d 476, 481, 407 N.E.2d 1013, 1017.) Furthermore, the award of expenses and fees is within the discretion of the trial court and will not be reversed absent abuse of that discretion. *Demos v. Ericson* (1982), 104 Ill. App. 3d 403, 405, 432 N.E.2d 1035.

In the pending case, Model's amended complaint, filed on July 13, 1978, added, *inter alia*, the following allegations to Paragraph 7 of the original complaint:

"f. Said machine was not equipped with a presence sensing device to deactivate the ram when the operator's hand is in the point of operation.

g. Said machine was not equipped with a gate or moveable barrier device to enclose the point of operation.

h. Said machine was not equipped with a pull-back device to withdraw the operator's hands from the point of operation."

In its argument for section 2—611 attorney fees, Walsh attacked the allegations in Model's amended complaint as unreasonable and untrue, and set forth an extensive analysis of products liability law in an attempt to support its contentions. In so doing, Walsh confused defenses which might have been available to it in the principle case with the elements it must prove under section 2—611. The issue is not whether Model had a likelihood of prevailing in the suit, but whether Model made allegations which were found to be untrue.

After reviewing the record, we find that the record itself is dispositive of the issue. It is replete with admissions by Walsh that the press was shipped to Model without guards of any kind attached. For example, during the section 2—611 proceedings, defense counsel stated:

"Model Industries was the one who guarded [the punch press], not Walsh Press. Walsh Press sent out a multi-function type press with no guards on it. The employer guards them themselves, and that's set forth in our motion for summary judgment.

---

[1]An amendment by the Illinois legislature (Pub. Act 79—1434, sec. 8, eff. Sept. 19, 1976), removed the good faith requirement from section 2—611. Therefore, as to fact situations arising after the effective date of the amendment, if the amendment is to be effective, the only requirements must be that the statements be made without reasonable cause and be found to be untrue. *Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 511, 394 N.E.2d 1273, 1281-82.

The employer sets them out themselves.

\* \* \*

\*\*\* The machine as it left Walsh had no barrier."

In effect, the truth of Model's allegations that the press was not equipped with guards when it left Walsh's control was stipulated to by the parties. Because Walsh focused on liability, and not the factual truth of the allegations, it presented the court with a plentitude of data and case law that is inapplicable to the section 2—611 fee issue. Accordingly, we find that Walsh did not meet its burden of proof in establishing the requisite elements of section 2—611, and hold that the award of attorney fees thereunder was an abuse of the trial court's discretion.

In addition to its misdirected focus, Walsh was also not aided by its reliance on *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 178 N.E.2d 650, and *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297, both of which are factually distinguishable from the situation at bar. In *Ready*, the court found that the complaint not only stated an erroneous theory, but that most of the allegations were factually untrue. As stated, there were no factually untrue statements in the pending case. In *Pole*, the supreme court reversed the appellate court on the ground that no hearing had been held on the section 2—611 motion. By comparison, extensive hearings were held on Walsh's motion. As a final note, our decision that attorney fees were improperly awarded by the trial court obviates the need to discuss Walsh's cross-appeal for an increase in the fees awarded.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

LORENZ and MEJDA, JJ., concur.