**Susan Lapka SCHMITZ, Plaintiff,**

v.

**CAMPBELL–MITHUN, INC., Defendant.**

No. 88 C 2314.

United States District Court,
N.D. Illinois, E.D.

Feb. 13, 1989.

Kathleen I. Zitzka, Niew & Zitzka, Oak Brook, Ill., for plaintiff.

Paul R. Garry, Frank J. Saibert, Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Susan Lapka Schmitz was employed by Campbell–Mithun, Inc., an advertising agency. She began there in June 1984 and was fired on October 30, 1987. She sued Campbell–Mithun in state court for breach of contract alleging (1) that it maintains an employee manual which obligated it to follow set procedures in terminating employees and (2) that it did not follow those procedures in discharging her because she was not placed "on probation as required by the manual." Campbell–Mithun removed the case here on diversity grounds.

After removal Schmitz pursued the suit by responding to discovery, seeking discovery, and demanding in writing a settlement of $25,000 and "a letter of apology to each employee of Campbell–Mithun on October 30, 1987." Following discovery, Campbell–Mithun moved for summary judgment on the ground that its employee manual did not in fact contain the probation-before-termination provision relied upon by Schmitz. Schmitz has not responded to the summary judgment motion, and her time to do so expired (after extensions) on 1 November 1988. There is no dispute that the employee manual does not contain the language which was the basis of the complaint. Therefore, Campbell–Mithun is entitled to summary judgment substantively, *see Duldulao v. Saint Mary Hospital*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), and procedurally (because Schmitz has failed to answer or oppose the motion). Indeed Schmitz's response to the motion for summary judgment was to advise the defendant's attorney that she would "seek an order dismissing this matter" pursuant to Fed.R.Civ.P. 41. The defendant answered this letter with a motion for sanctions under Fed.R. Civ.P. 11 (Rule 11) or Ill.Rev.Stat. ch. 110, Sec. 2–611 (Rule 2–611), or, in the alternative, to condition dismissal upon payment

of fees and costs pursuant to Rule 41. Schmitz, however, has yet to file a Rule 41 motion. And that she has not done so is unsurprising because that Rule allows conditioning dismissal upon payment of fees and costs once a motion for summary judgment has been filed. *See* Rule 41(a)(2). Instead she simply permitted the case to end by leaving unopposed the summary judgment motion, thus rendering 41(a)(2) inapplicable. It remains only to consider the defendant's motion for sanctions.

I

Campbell–Mithun's motion for sanctions focuses on Schmitz's complaint. It argues that Schmitz filed her complaint for an improper purpose (to seek revenge rather than redress), and without making a reasonable inquiry into the factual basis for her claim.

Since Schmitz's complaint was filed in state court, Rule 11 does not apply. *Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808 (9th Cir.1987); *Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir.1987); *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 256–57 (4th Cir.1987); *Peffley v. Durakool, Inc.*, 669 F.Supp. 1453, 1460–61 (N.D.Ind.1987); *Cuneo, Cabrini Medical Center v. Holiday Inn*, 111 F.R.D. 444, 447 (N.D.Ill.1986); *see also* Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 212 (1988). A complaint filed in state court and subsequently removed to Federal District Court would be subject to Rule 11, however, if the Rule is construed to impose a continuing duty on parties and counsel to revise pleadings to conform to newly discovered information. *See, e.g., Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335–36 (6th Cir.1988); Note, *Rule 11 of the Federal Rules of Civil Procedure and the Duty to Withdraw a Baseless Pleading*, 56 Fordham L.Rev. 697 (1988) (advocating imposition of continuing duty under Rule 11); Parness, *Groundless Pleadings and Certifying Attorneys in the Federal Courts*, 1985 Utah L.Rev. 325

(same). But *Pantry Queen Foods v. Lifschultz Fast Freight*, 809 F.2d 451, 454 (7th Cir.1987), held that "Rule 11 does not require the updating of papers that were not subject to sanctions when filed." And, with the exception of the Sixth Circuit in *Herron*[1], every other Court of Appeals has reached this conclusion. *See Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir.1987); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir.1988) (*en banc*); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986).

In *Flip Side Productions, Inc. v. JAM Productions, Ltd.*, 843 F.2d 1024 (7th Cir.) *cert. denied*, — U.S. —, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), however, the Seventh Circuit, without adverting to *Pantry Queen*, upheld an award of Rule 11 sanctions against a plaintiff which failed to dismiss its complaint against one defendant after discovery made it clear the defendant was not involved in any wrongdoing. Though the court did not say so, a necessary implication of its holding is that Rule 11 does impose a continuing duty on lawyers and litigants.

This apparent conflict places us in the unfortunate position of having to determine which decision is binding here. At first blush it would seem to be *Flip Side* because it is the more recent decision. (We put to the side rules governing *stare decisis* peculiar to the Courts of Appeals, such as one three-member panel may not overrule the decision of a previous panel without circulating the opinion among all judges in active service to determine whether the issue should be reheard *en banc*. *See* Seventh Circuit Rule 40(f)). But this assumes that both decisions are authoritative (for only authoritative decisions are binding, *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987)); and, as we shall see, this assumption is not borne out. *Pantry Queen* spe-

---

**1.** The Eleventh Circuit also appears to endorse the continuing duty approach. *See Collins v.* *Walden*, 834 F.2d 961 (11th Cir.1987).

cifically rejected the continuing duty approach after careful consideration of the arguments for and against. *Flip Side*, on the other hand, contains nary a word on the issue of whether Rule 11 imposes a continuing duty; it simply assumes it. And "[a] point of law merely assumed in an opinion, not discussed, is not authoritative." *In re Stegall*, 865 F.2d 140, 142 (7th Cir.1989). Accord *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37–38, 73 S.Ct. 67, 69–70, 97 L.Ed. 54 (1944); *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925); *United States v. Kucik*, 844 F.2d 493, 498 (7th Cir.1988); *Sakomoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir.1985); Wambaugh, *The Study of Cases* 24–25 (2d ed. 1894). *Pantry Queen* governs.

### A

■ Even assuming that all papers filed after removal are subject to Rule 11, *see* Fed.R.Civ.P. 81(c); *Meadow Limited Partnership v. Meadow Farm Partnership*, 816 F.2d 970 (4th Cir.1987), *but see* Sec. B, below, it would not control here because Campbell–Mithun wants sanctions for papers filed *before* removal. And Rule 11 (at least in this Circuit) will not accommodate its wish.

Campbell–Mithun, undeterred, argues that if Rule 11 does not apply, then Rule 2–611 does. It points out that to apply Rule 2–611 would not involve novel issues of Illinois law because Rule 2–611 is patterned after Rule 11 and Illinois courts look to federal precedent for guidance. *In re Mitan*, 119 Ill.2d 229, 247, 116 Ill.Dec. 179, 518 N.E.2d 1000 (1987).

Neither party has pointed to any obstacle standing in the path of applying Rule 2–611 here; indeed both contended at oral argument that we are compelled to apply it under the rule announced in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Erie*, the Court held that in diversity cases, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." 304 U.S. at 78, 58 S.Ct. at 822. *Erie* "expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts", *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); *see also* C. Wright, *The Law of the Federal Courts* Sec. 55 (4th ed.1983), and returned to the states a power unconstitutionally exercised by the federal courts for nearly a century: federal courts had overstepped their constitutional bounds by deciding diversity cases in accordance with "general common law." *Erie*, 304 U.S. at 78–80, 58 S.Ct. at 822–823.[2] *Erie* was thus concerned with the intrusion of federal law into areas reserved by the Constitution for state law. But that is no concern in this case. Here, we must consider only whether applying *Illinois* law will somehow transgress our constitutional or statutory limitations; we need not, as in *Erie*, determine whether federal law or state law constitutes the appropriate source of rules of decision. *Erie* presupposes a conflict between state and federal law (and, as we shall see, that no Federal Rule applies). But because Rule 11 does not apply to the filing of a complaint in state court, it necessarily follows that there can be no conflict between the different rules. Thus *Erie* does not compel applying Rule 2–611 here; but neither does it prohibit it. It is simply beside the point.

■ In addition, to hold that we cannot apply Rule 2–611 would mean that a plaintiff could file utterly baseless papers in state court and escape sanctions that otherwise would have been imposed on him by that court because of the happenstance (from the plaintiff's perspective) that the defendant removed the case to Federal District Court. While this possibility does not justify the application of Rule 11 (*but see Herron*, 858 F.2d at 336), it provides ample

---

**2.** Precisely why this is *unconstitutional* is the subject of much scholarly discussion with which we need not concern ourselves. *See, e.g.,* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* sec. 4505 (1982); C. Wright, *The Law of the Federal Courts* Sec. 56 (4th ed.1983).

reason to apply a cognate state rule which is intended to regulate such conduct, regardless of its affinity to Rule 11. We hold, therefore, that we may apply Rule 2–611 to Schmitz's complaint, which was originally filed in state court and subsequently removed to federal court.

## B

■ Which rule applies to papers filed in Federal District Court *after* removal, such as Schmitz's discovery requests and responses? Fed.R.Civ.P. 81(c) says Rule 11 does. *See also Meadow Limited Partnership v. Meadow Farm Partnership*, 816 F.2d 970 (4th Cir.1987). Both parties, however, maintain that Rule 2–611 does; and they cite a number of Seventh Circuit decisions that appear to support their position. *E.g., Great Western Sugar Co. v. White Stokes Co.*, 736 F.2d 428, 431–32 (7th Cir. 1984); *Royal Indem. Co. v. Kenny Constr. Co.*, 528 F.2d 184, 190–91 (7th Cir.1975); *Tryforos v. Icarian Dev. Co.*, 518 F.2d 1258, 1265–67 (7th Cir.1975). We are constrained to conclude otherwise.

"When a situation is covered by one of the Federal Rules, * * * the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, th[e Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the [Rules] Enabling Act [, 28 U.S.C. sec. 2072,] nor constitutional restrictions." *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965).

There can be no doubt that Rule 11 covers the filing of papers in District Court. By its terms the Rule applies to "[e]very pleading, motion, and other paper * * *." *Painewebber, Inc. v. Can Am Financial Group, Ltd.*, 121 F.R.D. 324, 330 (N.D.Ill. 1988). According to *Hanna*, whether a

Rule exceeds the limitations imposed by the Enabling Act and the Constitution must be determined "in light of the [substance-procedure] distinction set forth in [*Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) ]." *Id.* 380 U.S. at 470–71, 85 S.Ct. at 1143–44. *Sibbach* held that a rule is procedural if it regulates "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." 312 U.S. at 14, 61 S.Ct. at 426. Recognizing that this distinction is a slippery one, and could spell trouble for many of the Federal Rules, *Hanna* went further than *Sibbach* and held that a rule is valid under both the Enabling Act and the Constitution if it "regulate[s] matter[ ] which, though falling within the uncertain area between substance and procedure [is] rationally capable of classification as either." *Id.* 380 U.S. at 472, 85 S.Ct. at 1144.[3]

Rule 11 is valid. It is intended to prevent litigation abuse by authorizing punishment of parties and counsel who file papers in Federal District Court for an improper purpose, or which lack an adequate legal or factual basis. *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1438 (7th Cir.1987). No serious argument can be made that the Rule is not procedural within the meaning of *Sibbach* or the Enabling Act. It creates no new entitlement which itself may justify initiating litigation; rather, it prescribes the manner in which litigants must go about vindicating rights which brought them into court in the first place. And it oversteps neither the Enabling Act nor the Constitution. Therefore we must apply it.

But what of *Great Western Sugar Co., Royal Indemnity Co.,* and *Tryforos?* These decisions do, as both parties pointed out, apply Rule 2–611 to diversity actions filed in federal court. Of these, only *Try-*

---

**3.** Scholars have suggested this formulation of the test is incomplete because it addresses only the constitutional limits of Congress to promulgate rules, and ignores the stricter limitation ("shall not abridge, enlarge or modify any substantive right") imposed by the Enabling Act. *See* C. Wright, *The Law of the Federal Courts* Sec. 59 (4th ed.1983). It is of no moment here,

however; Rule 11 would not violate the Enabling Act's "stricter" standard because it does not interfere with a substantive right (at least from an *ex ante* perspective, although it may from an *ex post* perspective, as may just about every rule. *See Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 445–46, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946)).

*foros* contains any explanation. In *Tryforos*, the court applied then-sec. 41 of the Illinois Code (now Rule 2–611) to a diversity case, relying on the following footnote in *Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975):

> "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state should be followed." 6 J. Moore, Federal Practice Para. 54.77[2] (1974 ed.), at 1712–1713 (footnotes omitted). * * * Prior to the decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), this Court held that a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts. "[I]t is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases, and it has made that policy effective by making the allowance of the fee mandatory on its courts in those cases. It would be at least anomalous if this policy could be thwarted and the right so plainly given destroyed by removal of the cause to the federal courts." *People of Sioux County v. National Surety Co.*, 276 U.S. 238, 243 [48 S.Ct. 239, 240, 72 L.Ed. 547] (1928). * * * We see nothing after *Erie* requiring a departure from this result. See *Hanna v. Plumer*, 380 U.S. 460, 467–468 [85 S.Ct. 1136, 1141–1142, 14 L.Ed.2d 8] (1965). The same would clearly hold for a judicially created rule, although the question of the proper rule to govern in awarding attorneys' fees in federal diversity cases in the absence of State statutory authorization loses much of its practical significance in light of the fact that most States follow the restrictive American rule [ (which prohibits a prevailing party in litigation from recovering costs, including attorneys' fees, from his opponent) ].

421 U.S. at 259 n. 31, 95 S.Ct. at 1622. There are several difficulties with *Tryforos's* reading of these dicta from *Alyeska.*

It appears to fly in the face of *Hanna's* injunction that a Federal Rule, if applicable and valid, must be applied. To argue that Rule 2–611 must be applied because it is "substantive" is to embark upon the wrong inquiry. Under *Hanna*, an *Erie* analysis is necessary only if no valid Federal Rule governs. Here, Rule 11 does, and that is that.

The only way around this conclusion is to maintain that Rule 11 is not valid because it violates the Enabling Act's proviso that no Rule "abridge, enlarge or modify any substantive right * * *." And perhaps *Tryforos* understood *Alyeska* as suggesting that provisions such as Rule 2–611 create "substantive" rights which may not be abridged by the application of overlapping Federal Rules. But *Alyeska* does not comprehend so broad a proposition. The Court, in dicta, *see United States v. Crawley*, 837 F.2d 291 (7th Cir.1988), merely recognized that where attorney fees are part and parcel of a state-created substantive right (as they are in the Illinois Trade Secrets Act, for example, *see* Ill.Rev.Stat. ch. 140, sec. 355 (Smith–Hurd 1986 & 1988 Supp.)), they must be applied as an integral part of that right. *Cf.* Easterbrook, *Substance and Due Process* 1982 Supreme Court Review 85 (arguing that the existence or lack of procedural rules enacted as part of a substantive entitlement measures how much the entitlement is worth). This was the teaching of *People of Sioux County v. National Surety Co.*, 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547 (1928), which *Alyeska* cited, and remains true today, after *Erie* and *Hanna.* In such a circumstance, no Federal Rule governs, and the court must look to the policies underlying *Erie* to guide its determination. The Court also observed that no Federal Rule would cover a situation where a State chose to reject the American Rule in favor of making the losing side pay. Here also the court would undertake an *Erie* analysis (and it may well be "substantive" for *Erie* purposes be-

cause such a provision might provide an incentive to forum shop—for example, a defendant sued in a state court which rejects the American Rule might, in a given case, be wise to remove the case to Federal court, which employs it).

But *Alyeska* does not support the conclusion that provisions such as Rule 2–611 are substantive within the meaning of the Enabling Act. And again, to frame the issue in these terms is to ask the wrong question. If a Federal Rule covers a situation, it must be applied if valid. And it is valid if it regulates "matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." *Hanna*, 380 U.S. at 472, 85 S.Ct. at 1144. Rule 11 clearly meets this standard; and it is unnecessary to explore further its effect on Rule 2–611. Therefore, we hold that Rule 11 governs papers filed in Federal District Court after removal. The practical significance of this conclusion, we recognize, is somewhat diminished in this case in light of the similarity between the rules. Degree of similarity, however, is not a relevant consideration when determining whether a Federal Rule is to be applied.

## II

Rule 2–611 applies to Schmitz's complaint. Rule 11 applies to all papers filed after removal. This matter must be set for an evidentiary hearing to determine whether Schmitz or her attorney (or both) violated either of them.